UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

MAR 20 2014

ARTHUR JOHNSTON
BY_____ DEPUTY

| | | |
|---|---|---|
| ALPHA SERVICES, LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 3:14cv239 DPJ-FKB |
| | ) | |
| THOMAS E. PEREZ, in his official | ) | |
| capacity as United States Secretary of | ) | JUDGE _____ |
| Labor and the UNITED STATES | ) | |
| DEPARTMENT OF LABOR, | ) | MAGISTRATE _____ |
| 200 Constitution Avenue, NW, | ) | |
| Washington, DC 20210, and | ) | |
| | ) | |
| Defendants. | ) | **EMERGENCY ORAL ARGUMENT** |
| | ) | **REQUESTED** |
| | ) | in a Motion for Preliminary Injunction to be |
| | ) | separately filed. |

## VERIFIED COMPLAINT FOR DECLARATORY AND OR INJUNCTIVE RELIEF

Plaintiff Alpha Services, LLC ("Alpha Services") hereby brings this Complaint against Defendants Thomas E. Perez, in his official capacity as Secretary of the U.S. Department of Labor and the U.S. Department Labor.  As set forth thoroughly below, Alpha Services was aggrieved by a *de facto* final agency action by Defendants and their official representatives when Defendants announced and immediately applied a new and substantive rule that has significant, immediate, and irreparable impact upon the regulated business community, including Alpha Services, in violation of the Administrative Procedure Act.  As a result, Alpha Services seeks the following:

A.      For the Court to declare that the Defendants issued a new and substantive rule in violation of the requirements of the Administrative Procedure Act, 5 U.S.C. Section 553, when

1539848

Defendants did not publish the new rule for notice and comment but rather immediately issued the new rule and applied it to the regulated business community;

B.      Alternatively, should the Court determine that Defendants did not issue and/or apply a new and substantive rule, for the Court to declare that Defendants' application or interpretation of an existing rule is a significant departure from past practice so as to be arbitrary and capricious;

C.      Alternatively or additionally, should the Court determine that Defendants did not issue and/or apply a new and substantive rule, for the Court to declare that Defendants' have failed to act in accordance with the law;

D.      For the Court to declare that the Defendants have issued a new and substantive rule in violation of the Takings Clause of the Fifth Amendment, and thereby find that the new substantive rule is unconstitutional and unenforceable;

E.      For the Court to first temporarily restrain, and then permanently enjoin, Defendants from applying the new substantive rule to Alpha Services, as application of that rule prevents Alpha Services from satisfying its contractual obligations to its customers, thereby causing immediate and irreparable harm and injury to Alpha Services, as well as other members of the regulated business community;

F.      For the Court to enter an Order granting Alpha Services any other equitable relief as the Court may deem just, reasonable, and proper.

Alpha Services hereby requests that the Court commence an emergency hearing on this matter.  Time is of the essence because the new substantive rule that Defendants issued and applied to Alpha Services will prevent Alpha Services from fulfilling its contractual obligations

2

that are set to start on or around April 1, 2014.  Should Alpha Services be unable to fulfill its contractual obligations, Alpha Services may be liable for millions of dollars in monetary loss, contractual damages, and other economic damages.   This harm will be immediate and irreparable.

## PARTIES

1.      Alpha Services is a limited liability Company that engages in certain forestry services for its clients.  Alpha Services' principal place of business is Coeur d'Alene, Idaho, but it maintains a permanently staffed office in Hickory, Mississippi.   Alpha Services performs reforestation services and employs seasonal workers in Mississippi for approximately ten months of the year.  Exhibit 1, Declaration of Wade Zaharie.

2.      Defendants are Thomas E. Perez, in his official capacity as the United States Secretary of Labor and the United States Department of Labor.  They may be served pursuant to Rule 4 of the Federal Rules of Civil Procedure, or as otherwise permitted by law.

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because officers and agencies of the federal government are parties, and this matter presents a federal question arising under federal law and the United States Constitution.

4.      This Court has jurisdiction over the subject matter of the case pursuant to the Administrative Procedures Act ("APA"), codified at 5 U.S.C. § 702, *et seq.*; the Declaratory Judgment Act ("DCA"), codified at 28 U.S.C. § 2201, *et seq.*; and the Fifth Amendment to the United States Constitution.

3

5.     Venue is proper in the Southern District of Mississippi, Northern Division, pursuant to 28 U.S.C. 1391(c), (e) and 5 U.S.C. § 703.  Alpha Services is a limited liability company that maintains a permanent office in Hickory, Mississippi.  Defendants are officers or departments of the United States, and are sued in their official capacities.

## RELEVANT FACTS

### Alpha Services and the H-2B Labor Certification Process

6.     Alpha Services brings this action for declaratory and injunctive relief related to the promulgation and immediate application of a new substantive rule that the Chicago National Processing Center, a division of the Office of Foreign Labor Certification ("OFLC"), issued. The OFLC is an office within the Employment and Training Administration ("ETA") of the DOL.

7.     Alpha Services is a forestry employer. Alpha Services offers its clients various reforestation services, including, but not limited to, tree planting, thinning, mastication, removal, pruning, herbicide application, and gopher bating. Exhibit 1, Declaration of Wade Zaharie.

8.     For many years, Alpha has faced shortages of able, willing, and qualified labor that it needs to fulfill its contractual obligations to its customers.  To meet the needs of U.S. employers facing labor shortages outside of agriculture, Congress created what is known as the H-2B Program.  *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b).   The H-2B program permits foreign workers to enter the United States on a temporary basis to "perform temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in [the United States]." Alpha Services relies upon the use of guest workers who are certified to work in the

4

United States pursuant to the United States government's H-2B guest worker program. Exhibit 1.

8 U.S.C. Section 1101(a)(H)(ii)(b).

9.      The H-2B program allows U.S. employers to hire foreign nationals on a temporary basis when they face a documented labor shortage.  As currently administered, DOL advises the Department of Homeland Security as to two issues:  whether there is a labor shortage and whether the employment of foreign nationals would have a depressive or "adverse effect" of the wages of similarly employed domestic workers.   As a prelude to hiring an H-2B worker, employers must make specific efforts to find willing and qualified U.S. workers at specified wage rates, advertise to hire U.S. workers, and follow detailed and lengthy recruitment processes.  20 C.F.R. § 655.15 (d) and (f).

10.      Although forestry employers are considered "agricultural" in some cases, they are treated as non-agricultural employers for the purpose of determining the eligibility for the H-2B program.  Due to the nature of reforestation work, workers will often travel from state to state over the course of a single reforestation season, and provide a range of services from pre-commercial thinning to tree planting. Exhibit 1.  Because they migrate, the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 *et seq.* ("MSPA") has been deemed applicable to the employment of forestry workers.

11.      The primary service that Alpha Services provides is reforestation.  Reforestation is the natural or intentional restocking of existing forests and woodlands that have been depleted, usually through deforestation.  Reforestation can be used to improve the quality of human life by soaking up pollution and dust from the air, rebuilding natural habitats and ecosystems, mitigating global warming since forests facilitate bio-sequestration of atmospheric carbon, and harvesting

of the forest resources, primarily timber. Most reforestation is performed under contract with the federal government. Although exceptions apply, the McNamara-O'Hara Service Contract Act typically governs a reforestation service provider's work. Exhibit 1.

12.     Reforestation work creates special challenges for the regulation of forestry employers' participation in the H-2B program.  One challenge is that an employer, such as Alpha Services, typically works in more than one state during a single season.  Another challenge is that forestry employers – and therefore forestry workers – typically provide a wide range of services from pre-commercial trimming to tree planting to other services.  These characteristics pose a special challenge to setting of the prevailing wages that the forestry employer must pay the H-2B worker to neutralize the potential wage depressive effect from the hiring of a foreign worker. Exhibit 1.

13.     Employers who seek to hire foreign nationals under the H-2B program must apply for and receive a temporary "labor certification" from the DOL.  8 C.F.R. § 214.2(h)(6)(iii).  The purpose of the labor certification process is to ensure that qualified U.S. workers are given an opportunity to apply for an available job.  The H-2B program accomplishes this by verifying that there is a need for foreign guest workers to perform the available jobs, and that the H-2B workers' wage does not depress prevailing wages in areas where there are U.S. workers.

14.     A Certifying Officer in the ETA of the DOL reviews applications for temporary labor certifications. 20 C.F.R. § 655.23.  If the Certifying Officer denies a request for labor certification, in whole or in part, the aggrieved employer may seek administrative review before the Board of Alien Labor Certification Appeals ("BALCA").  20 C.F.R. § 655.33.

15.      Prior to submitting an Application For Temporary Employment Certification to the DOL, an employer must apply for and receive one or more Prevailing Wage Determination(s) ("PWD") from the DOL's National Prevailing Wage Center for the job category or categories at issue. Once the employer receives the PWDs, the employer then uses that wage information to advertise the job opportunity or opportunities to U.S. workers. This is a required step.  At all times pertinent to this Complaint, Alpha Services obtained and properly advertised the job descriptions and prevailing wages to U.S. workers.  Exhibit 1.

16.      Over the course of many years, DOL developed and applied a consistent approach to the issuance of PWDs for forestry.  For several seasons, forestry employers typically submitted PWD requests using a _single_ Service Contract Act occupation as the basis for the determination.  The National Prevailing Wage Center would then issue a PWD based on that specific Service Contract Act occupation.  The employer would next advertise for the available position at the appropriate prevailing wage, and then complete the labor certification application process.  Exhibit 1.

17.      Last season, DOL's practice changed.  As before, employers submitted a request for a PWD using a single Service Contract Act occupation as the basis for that determination. This time, however, the National Prevailing Wage Center issued _two_ or more PWDs  – one for each major occupational component of the proposed job opportunity (_e.g._, Tree Planting _and_ Brush/Pre-Commercial Thinning).  This practice linked the Prevailing Wage Determination more precisely to the actual work being performed, and it allowed employers to compete more successfully for contracts.  It also ensured that the DOL did not unlawfully require an employer to pay more than the prevailing wage for some work. Exhibit 1.

7

18.     Upon receipt of the Prevailing Wage Determination(s), employers advertised a range of potential wages and job descriptions.  Both MSPA and DOL's H-2B regulations require the wage rate to be advertised as a range.  The job descriptions and the prevailing wage ranges obtained from the National Prevailing Wage Center must be published for two days in a local area newspaper and via work order submitted to the particular state workforce agency in the area where the work is to be performed.  This advertising requirement must be accomplished before the employer submits the H-2B request for labor certification to the DOL.   Exhibit 1.  Accordingly, once an employer advertises the job opportunities, the employer is unable to modify the advertisement if the Certifying Officer determines there is a deficiency with the advertisement regulation.

19.     Once the DOL approves a labor certification and the employers offer H-2B workers job opportunities, the approved labor certifications, as well as other documentation regarding the prospective H-2B employment, are sent to the United States Citizenship and Immigration Services ("USCIS") for processing.  This step is necessary so that the prospective H-2B worker may obtain an H-2B visa that will allow the worker to enter and/or continue to work legally in the United States.  Typically, the H-2B visa remains valid for a period of six months, but USCIS may extend the visa upon an application for an extension.  Exhibit 1.

**Alpha Services' Application for a Labor Certification for H-2B Workers
from November 18, 2013 to March 31, 2014 for the Southern Planting Season**

20.     In mid-2013, Alpha Services submitted a request for labor certification to the DOL seeking certification for 250 H-2B workers to perform reforestation services (which include spraying, hand pruning, and fertilizing) in Mississippi, Alabama, Arkansas, Georgia, Louisiana, North Carolina, South Carolina, Tennessee, and Texas from November 18, 2013 to

March 31, 2014 ("the Southern planting season"). Exhibit 2. The work under this labor certification was to begin in Meridian, Mississippi, and the workers would travel to other states as needed to fulfill Alpha Services' contractual obligations to its customers.

21.     Prior to submitting the request for labor certification to the DOL, as required by the applicable regulations, Alpha Services obtained Prevailing Wage Determinations for the areas where the work was to be performed and for the particular job opportunities available. Exhibit 3.  Alpha Services also advertised for the available positions in the Meridian Star on Sunday, September 22, 2013, and Monday, September 23, 2013.  Exhibit 4.  The Meridian Star advertisement set forth a description of the job duties and a wage range from "$7.62 up to possible $14.47/hr OT $11.43 up to possible $21.71/hr." Exhibit 4.  Alpha Services also opened a work order for these positions with the Mississippi Department of Employment Security. Exhibit 5.

22.     On November 1, 2013, the DOL Certifying Officer issued a "Final Determination for Partial Certification" to Alpha Services.  Exhibit 6.  This Final Determination approved 247 H-2B forest and conservation workers from November 18, 2013 to March 31, 2014. Alpha Services' request for 250 workers was reduced by three because, pursuant to the required local advertising, there were three U.S. workers who applied for available positions.

23.     At no time did the Certifying Officer indicate that Alpha Services' advertisement in the Meridian Star, which included a description of the job duties and a range of wage rates for the job duties, failed to comply with the applicable advertising requirements.

**Alpha Services' Application for a Labor Certification for H-2B Workers
from April 1, 2014 to July 31, 2014 for the Southern Planting Season**

24.     In late 2013, Alpha Services submitted a request for labor certification to the DOL

seeking a certification for 130 H-2B workers to perform reforestation services in Mississippi,

Alabama, Arkansas, Georgia, Louisiana, North Carolina, South Carolina, Tennessee, Texas, and

Virginia from April 1, 2014 to July 31, 2014, again for the Southern planting season.  Exhibit 7.

The work for this particular labor certification is to begin in Meridian, Mississippi, and the

workers would travel to other states encompassed within the certification as needed to fulfill the

Company's contractual obligations to its customers.

25.     Prior to submitting a request for labor certification to the DOL, and as required by

the applicable regulations, Alpha Services obtained Prevailing Wage Determinations for the

areas where the work would be performed and for the particular jobs.  Exhibit 8.  Also, Alpha

Services advertised for the available positions in the Meridian Star on January 29, 2014,  and

February 2, 2014.  Exhibit 9.  The Meridian Star advertisement set forth the job descriptions and

a wage range from "$7.62 up to possible $10.76/hr OT $11.43 up to possible $16.14/hr." Exhibit

9. Alpha Services also opened a work order for these positions with the Mississippi Department

of Employment Security.  Exhibit 10.

26.     On February 25, 2014, the DOL Certifying Officer issued a "Final

Determination" to Alpha Services.  Exhibit 11.  This Final Determination approved 130 H-2B

workers from April 1, 2014 to July 31, 2014.

27.     At no time did the Certifying Officer indicate that Alpha Services' advertisement

in the Meridian Star, which included a description of the job duties and a range of wage rates for

the job duties, failed to comply with the applicable advertising requirements.

**Alpha Services' Application for a Labor Certification for H-2B Workers
from April 4, 2014 to July 31, 2014 for the Northwest Planting Season**

28.     In late 2013, Alpha Services again submitted a request for labor certification to the DOL seeking a certification for 150 H-2B forest and conservation workers to perform reforestation services in Idaho, Oregon, Montana, and Washington from April 4, 2014 to July 31, 2014 ("the Northwest planting season"). Exhibit 12. The work for this labor certification is to begin in Coeur d'Alene, Idaho, and the workers will travel to other states as needed to fulfill the Company's contractual obligations to its customers.

29.     Prior to submitting a request for this labor certification to the DOL, and as required by the applicable regulations, Alpha Services obtained Prevailing Wage Determinations for the areas in which the work was to be performed. Exhibit 13. Also, Alpha Services advertised for the available positions in the Coeur d'Alene Press on Sunday, February 9, 2014 and Monday, February 10, 2014. Exhibit 14. The Coeur d'Alene Press advertisement set forth job descriptions and a wage range from "$13.54/hr up to possible $15.69/hr OT $20.30 up to possible $23.54/hr." Alpha Services also opened a work order for these positions with the Idaho Department of Labor on February 3, 2013. Exhibit 15.

30.     On February 24, 2014, the DOL Certifying Officer issued a "Request for Information" to Alpha Services. Exhibit 16. This Request for Information stated that the DOL was unable to render a final determination on Alpha Services' application, and the Certifying Officer identified what he believed were the deficiencies in the application. The Certifying Officer stated those deficiencies related to how Alpha Services advertised for the job opportunities.

11

31.     Specifically, the Certifying Officer stated that Alpha Services failed to satisfy all requirements of the H-2B program in that Alpha Services failed to satisfy advertising requirements according to 20 CFR 655.15(f)(1) and 20 CFR 655.17(g).  The Certifying Officer cited as deficient Alpha Services' advertisements, which identified a combination of job duties and a wage range based on the two Prevailing Wage Determinations. The Certifying Officer concluded that Alpha Services should have advertised "at wage rate which encompasses the entire scope of the job duties required." This effectively demands that the regulated employers pay a single wage for all occupations and that it be the highest of all the possible wages, even though the proper prevailing wage depends on where the work is performed and the particular job being performed.

32.     As set forth above, however, Alpha Services advertised for these job opportunities the same way that it had advertised for job opportunities in the past, all of which were approved by the Certifying Officer.

33.     At all times, Alpha Services complied with 20 C.F.R. § 655.17(g), which requires employers to advertise the available job opportunities in the applicable local area so that U.S. workers have the opportunity to apply for an available position.  It also requires that the advertisement must include the wage rates applicable to the job opportunity or job opportunities.

34.     The Request for Information issued by the Certifying Officer further noted that the regulations require that all advertisements occur <u>prior</u> to the application submission date of February 18, 2014, and that subsequent advertisements will not cure any pre-advertising deficiencies.  Exhibit 16.  <u>This was the first time that a Certifying Officer had ever expressed to Alpha Services that Alpha Services' advertisements were not compliant with the regulations.</u>

12

35.     Because advertisements must occur before the submission of the labor certification to the DOL, the Certifying Officer, in effect, imposed a new substantive rule upon Alpha Services, as well as other regulated employers that are similarly situated. The new substantive rule imposes a substantive condition upon Alpha Services that cannot be cured in time for Alpha Services to obtain the labor certification it needs or in time to hire or to relocate H-2B workers for the Northwest reforestation season.   The promulgation and immediate application of this new substantive rule violates the Administrative Procedures Act and the United States Constitution.  It must be enjoined to prevent immediate and substantial irreparable harm.

36.     If allowed to stand, the new substantive rule will prevent Alpha Services from fulfilling its contractual obligations to its customers.  This will cause Alpha Services to breach its contracts, which may result in millions of dollars in contractual damages and which will certainly result in irreparable harm to its reputation for reliability.  The imposition of this new rule will cause significant, immediate, and irreparable injury to Alpha Services if this Court does not restrain or invalidate it.

## A Recent BALCA Decision Makes This Issue Ripe for Review

37.     Because time is of the essence, Alpha Services cannot seek an administrative review of the Certifying Officer's Request for Information via the BALCA appeal process. Moreover, it is clear from a BALCA ruling on March 5, 2014, that this new rule regarding advertising is actually the announcement, promulgation, and immediate application of a new substantive rule with respect to advertising for H-2B job opportunities.

13

38.     On March 5, 2014, BALCA issued a Decision and Order which affirmed an adverse ruling against another forestry company, Pacific Coast Contracting ("the BALCA Decision").  *In re Pacific Coast Contracting*, BALCA Case No: 2014-TLN-00012; ETA Case No: H-400-14002-865424, attached as Exhibit 17.   Like Alpha Services, Pacific Coast Contracting provides reforestation services and uses H-2B workers to perform forestry and conservation work.   Both Alpha Services and Pacific Coast Contracting (as well as other reforestation providers who use H-2B workers) are part of the community of employers that are regulated by the United States government, and particularly the DOL.  The BALCA Decision has general applicability to these regulated employers.

39.     The BALCA Decision, in effect, announced and immediately promulgated and applied a new substantive rule. This rule imposed a new condition regarding advertising on the regulated employers who participate in the H-2B program.  In particular, the BALCA Decision held that Pacific Coast Contracting failed to comply with the pre-filing recruitment regulation at 20 C.F.R. § 655.17(g), which concerns advertising.  Exhibit 17.

40.     The BALCA Decision held, for the first time, that an employer could not advertise for job opportunities by advertising a range of wage rates that would be applicable to the available opportunities.  This effectively demands that the regulated employers pay a single wage for all occupations and that it be the highest of all the possible wages, even though the proper prevailing wage depends on where the work is performed and the particular job being performed.  Exhibit 1.

40.     Although the BALCA Decision was not a direct adverse ruling against Alpha Services, the BALCA Decision nonetheless constituted the announcement, promulgation, and

14

application of a new national policy and substantive rule that adversely impacts Alpha Services, as well as other regulated employers.

41.     On February 26, 2014, Alpha Services responded to the Request for Information, explaining that the new rule resulted in an incurable deficiency.  Exhibit 18.  Alpha Services supplemented its response on March 6, 2014.  Exhibit 19.   While Alpha Services has not received a reply or final determination, in light of the incurable nature of the unexpected deficiency, the Certifying Officer will inevitably deny Alpha Services' application.  Thus, the Request for Information is, in essence, a *de facto* final decision by the Certifying Officer.  While applicable regulations permit appeal to BALCA, in this instance it would be futile for Alpha Services to appeal the Certifying Officer's February 24, 2014 Request for Information or any subsequent formal denial because BALCA will rely upon its March 5, 2014 Decision and Order to affirm the Certifying Officer.  This has the practical effect of denying Alpha Services request for a labor certification for the Northwest reforestation season, thereby resulting in significant and immediate irreparable harm to Alpha Services.

42.     The Certifying Officer's Request for Information and the BALCA Decision will cause Alpha Services certain and immediate irreparable harm, damages or injury if the relief Alpha Services seeks from the Court is not granted.  The new substantive rule effectively prevents Alpha Services from fulfilling its contractual obligations to provide reforestation services to its clients, beginning on or around April 4, 2014. It also effectively demands that the regulated employers pay a single wage for all occupations and that it be the highest of all the possible wages, even though the proper prevailing wage depends on where the work is performed and the particular job being performed. DOL may not require Alpha to pay the higher

15

Thinning wage to workers engaged in Tree Planting. *Williams v. Usery,* 531 F.2d 305, 306 (5th Cir. 1976) ("[DOL's] authority is limited to making an economic determination of what rate must be paid all workers to neutralize any 'adverse effect' resultant from the influx of temporary foreign workers.").

43.     It should be noted that April 4, 2014, was not Alpha Services' intended start date for the Northwest reforestation season.  Instead, Alpha Services intended to begin work on April 1, 2014, to match its H-2B workers' visa expiration date of March 31, 2014.  To achieve this start date, Alpha Services needed certification from the DOL no later than March 30, 2014, so that USCIS would receive the approved certification and allow the transfers by March 31, 2014. Due to the Fall 2013 government shutdown that resulted in a backlog in receiving the prevailing wage determinations, Alpha Services was forced to push back to April 4, 2014. Exhibit 1. Regardless, if Alpha Services is unable to fulfill its contractual obligations, it may be liable for millions of dollars in contractual damages.

44.     Because time is of the essence, the only way for Alpha Services to seek relief from the promulgation and application of an invalid substantive rule is in federal court.  The Request for Information the Certifying Officer issued to Alpha Services (Exhibit 16), in conjunction with the BALCA Decision that upheld the Certifying Officer's decision as it applies to Pacific Coast Contracting (Exhibit 17), renders this issue ripe for consideration by this Honorable Court.

45.     If the new advertising rule is not invalidated, Alpha Services' application for temporary labor certification for H-2B workers will result in a monetary loss of approximately $280,000 for two months' of work.  In addition, Alpha Services may be forced to lay off its

administrative staff of seven people.  There would be a secondary economic loss to the local community from the absence of approximately 150 workers.  Exhibit 1.

46.     The potential contractual damages that Alpha Services may suffer is staggering.  Alpha Services would be exposed to contract damages for seedling loss.  Seedlings have a value in the Northwest between 20 and 50 cents each.  Most of Alpha Services' contracts require Alpha Services to pay damages of up to $5.00 per seedling for lost or damaged seedlings.  Alpha has approximately $1.4 million in contracts, which represents about 7,777,777 seedlings.  Using an average price of 30 cents per seedling, Alpha Services would be exposed to contract damages of $2,333,333.33, before adding liquidated damages.  Exhibit 1.

47.     If Alpha Services cannot perform the services for which it has contracted, its loss of reputation will be irreparable.  Alpha Services has invested a substantial sum of money in earning and maintaining a reputation for reliability.   If Alpha Services cannot satisfy its contractual obligations, its reputation for reliability will be harmed beyond repair.  Exhibit 1.

## FIRST CAUSE OF ACTION

### Violation of the Administrative Procedure Act,
### 5 U.S.C. §§ 553 and 701, *et seq.*

48.     Alpha Services re-alleges and incorporates by reference the allegations of Paragraphs 1-47 of the Complaint as if fully set forth herein.

49.     By promulgating and immediately applying a new substantive rule, Defendants violated the APA, as they failed to publish the rule under the notice and comment provisions, 5 U.S.C. Section 553.  Defendants' failure to abide by the applicable provisions of the APA renders the new substantive rule invalid.  *See Shell Offshore Inc. et al. v. Babbitt et al.*, 238 F.3d 622 (5th Cir. 2001) ("When an agency has given its regulation a definitive interpretation, and

17

later significantly revises that interpretation, the agency has in effect amended its rule, something it may not accomplish without notice and comment" under the APA).

50.     Alternatively, should the Court determine that the Defendants did not issue a new substantive rule in violation of the APA, Defendants' departure from the established past practice regarding advertising is arbitrary and capricious, thereby rendering a new interpretation of an existing substantive rule invalid.

## SECOND CAUSE OF ACTION

### Violation of the Takings Clause of the
### Fifth Amendment to the United States Constitution

51.     Alpha Services re-alleges and incorporates by reference the allegations of Paragraphs 1-50 of the Complaint as if fully set forth herein.

52.     Defendants, via the issuance of a new substantive rule regarding advertising, imposed a new and substantial burdens on Alpha Services and other regulated employers.  These burdens have a retroactive effect, and therefore amount to a taking of private property without just compensation.

## THIRD CAUSE OF ACTION

### Declaration Pursuant to the Declaratory Judgment Act

53.     Alpha Services re-alleges and incorporates by reference the allegations or Paragraphs 1-52 of the Complaint as if fully set forth herein.

54.     There is an actual controversy of sufficient immediacy and concreteness related to Alpha Services legal rights, such that relief is warranted under 28 U.S.C. §§ 2201, 2202.

18

55.     The harm Alpha Services will experience as a result of the actions and threatened actions of Defendants is sufficiently real and imminent to warrant the issuance of conclusive declaratory judgment and related injunctive relief.

## PRAYER FOR RELIEF

For the reasons set forth in this Complaint, Alpha Services requests relief from the Court as follows:

A.     For the Court to declare that the Defendants have issued a new and substantive rule in violation of the requirements of the Administrative Procedure Act, 5 U.S.C. Section 553, when Defendants did not publish the new rule for notice and comment but rather immediately issued the new rule and applied it to the regulated business community;

B.     Alternatively, should the Court determine that Defendants did not issue and/or apply a new and substantive rule, for the Court to declare that Defendants' application or interpretation of an existing rule is a significant departure from past practice so as to be arbitrary and capricious and therefore invalid;

C.     Alternatively or additionally, should the Court determine that Defendants did not issue and/or apply a new and substantive rule, for the Court to declare that Defendants' have failed to act in accordance with the law;

D.     For the Court to declare that the Defendants have issued a new and substantive rule in violation of the takings clause of the Fifth Amendment, thereby finding that the new substantive rule is unconstitutional, unenforceable, and invalid;

E.     For the Court to first temporarily restrain and then permanently enjoin Defendants from applying the new substantive rule to Alpha Services, as it will prevent Alpha Services from

19

satisfying is contractual obligations to its customers, thereby causing immediate and irreparable harm and injury to Alpha Services, as well as other members of the regulated business community;

   F.  For the Court to enter an Order granting Alpha Services any other equitable relief that the Court may deem just, reasonable, and proper;

   G.  For the Court to hear Alpha Services' Motion as expeditiously as possible; and

   H.  That Alpha Services be awarded their costs in pursuing this action, including reasonable attorneys' fees.

   Respectfully submitted, this 19th day of March 2014.

ALPHA SERVICES LLC, Plaintiff

By:

PREPARED BY:
Steven R. Cupp, Esq.
 Miss. Bar No. 99975
Jaklyn Wrigley, Esq.
 Miss. Bar No.103773
Fisher & Phillips LLP
2505 14th Street, Suite 300
Gulfport, MS 39501
Telephone: (228) 822-1440
Facsimile: (228) 822-1441
scupp@laborlawyers.com
jwrigley@laborlawyers.com

Ann Margaret Pointer (*pro hac vice* forthcoming)
 Ga. Bar No. 582750
Fisher & Phillips LLP
1075 Peachtree Street, NE, Suite 3500
Atlanta, GA  30309
Telephone:  (404) 231-1400
Facsimile:  (404) 240-4249

apointer@laborlawyers.com

STATE OF IDAHO                    )
                                 )
COUNTY OF KOOTENAI               )

## VERIFICATION

I, R. Wade Zaharie, Managing Member and General Manager of Alpha Services LLC, having being first duly cautioned and sworn, declares under penalty of perjury under the laws of the State of Idaho that the facts set forth in the foregoing complaint are true and correct to the best of his knowledge, information, and belief.

_____
R. Wade Zaharie

The foregoing instrument was
acknowledged before me this
19th day of March, 2014.

Signer identified by:

  Personal Knowledge; or

  Production of Identification

_Idaho state Drivers License_
Type of Identification Produced

_____
(Signature of Notary-State of _Idaho_     )

_____
(Print, Type, or Stamp Commissioned
Name of Notary Public)

JANIE COONEY
Notary Public
State of Idaho

My commission expires on: 2/6/15

22