UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALPHA SERVICES, LLC                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:14cv239-DPJ-FKB

THOMAS E. PEREZ, in his official capacity                              DEFENDANTS
as the United States Secretary of Labor, and the
UNITED STATES DEPARTMENT OF LABOR

ORDER

This case brought under the Administrative Procedure Act is before the Court on

Defendants' Motion to Dismiss for Lack of Jurisdiction [8] and Plaintiff's Motion for Leave to

File a First Amended Complaint [11].  Because there is no longer a live case or controversy

between the parties, Defendants' motion is granted, and Plaintiff's motion is denied.

I.      Facts and Procedural History

Plaintiff Alpha Services, LLC, is a forestry-services company that performs reforestation

services for its clients.  To help fill its workforce, Alpha Services participates in the federal H-2B

visa program, which "permits U.S. employers to recruit and hire temporary unskilled, non-

agricultural workers from abroad to fill positions that no qualified U.S. worker will accept."  *La.*

*Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 659 (3d Cir. 2014) (citing 8

U.S.C. § 1101(a)(15)(H)(ii)(b)).  The Third Circuit recently described generally how the program

works:

> First, an employer must obtain a temporary labor certification from the
> [Department of Labor "DOL"].  *See* 8 C.F.R. § 214.2(h)(6)(iii)(A).  This requires
> the employer to apply to the DOL for a prevailing wage determination for the area
> of intended employment.  *See* 20 C.F.R. § 655.10.  The DOL then calculates the
> prevailing wage based upon pertinent regulations, *e.g.*, the 2008 or 2011 Wage
> Rules.  *Id.*  The employer must also submit a work order with the state workforce
> agency serving the geographical area of intended employment and advertise the

position at a wage equal to or higher than the prevailing wage as determined by the DOL.  *Id.*  Once these conditions have been satisfied, the DOL will issue the labor certification, which serves as the DOL's verification that the employer has demonstrated that "there is an insufficient number of U.S. workers who are qualified and who will be available for the job opportunity for which certification is sought and that the employment of the H–2B workers will not adversely affect the benefits, wages, and working conditions of similarly employed U.S. workers." *Id.* § 655.50(b).  Only after the DOL issues the labor certification may an employer proceed to the second stage of the process:  filing an H–2B visa application with the [Department of Homeland Security "DHS"].  *See* 8 C.F.R. § 214.2(h)(6)(iii)(C), (E).  Although the DOL's labor certification is a prerequisite to obtaining an H–2B visa petition, the authority to grant or deny an H–2B visa petition ultimately rests with the DHS alone.  *See* 8 U.S.C. § 1184(c).

*Id.* at 660–61.  The issue in this case centers on the issuance of prevailing-wage determinations ("PWDs") and labor certifications by the DOL.

Alpha Services alleges that

[o]ver the course of many years, DOL developed and applied a consistent approach to the issuance of PWDs for forestry.  For several seasons, forestry employers typically submitted PWD requests using a <u>single</u> Service Contract Act occupation as the basis for the determination.  The National Prevailing Wage Center would then issue a PWD based on that specific Service Contract Act occupation.  The employer would next advertise for the available position at the appropriate prevailing wage, and then complete the labor certification process.

Compl. [1] ¶ 16.  But last season,

DOL's practice changed.  As before, employers submitted a request for a PWD using a single Service Contract Act occupation as the basis for that determination.  This time, however, the National Prevailing Wage Center issued <u>two</u> or more PWDs—one for each major occupational component of the proposed job opportunity (*e.g.*, Tree Planting <u>and</u> Brush/Pre-Commercial Thinning).

*Id.* ¶ 17.

Between mid-2013 and February 25, 2014, Alpha Services sought and was granted two DOL labor certifications approving its use of H-2B workers based on Alpha Services advertising the positions with a wage range consistent with the multiple PWDs it had received from the

DOL.  For example, in January 2014, Alpha Services advertised a need for "130 Temporary Forestry Workers," for whom the applicable wage was advertised as "$7.62/hr up to possible $10.76/hr OT $11.43/hr up to possible $16.14/hr" with wages "var[ying] per area."  Compl. [1] Ex. 10.  Alpha Services asserts that, with regard to each of these labor certifications, "[a]t no time did the [DOL] Certifying Officer indicate that Alpha Services'[s] advertisement . . . , which included a description of the job duties and a range of wage rates for the job duties, failed to comply with the applicable advertising requirements."  *Id.* ¶ 27.

In late 2013, Alpha Services began the process of applying for another labor certification for work to be performed between April 4, 2014, and July 31, 2014.  It obtained PWDs and, consistent with its approach on its two previous applications, advertised a range of wages to be paid the workers.  On February 24, 2014, the DOL issued a request for information to Alpha Services, identifying deficiencies in its application "related to how Alpha Services advertised for the job opportunities."  *Id.* ¶ 30.  In particular, the DOL indicated that Alpha Services should have advertised "at [a] wage rate which encompasses the entire scope of the job duties required," which "effectively demands that the regulated employers pay a single wage for all occupations and that it be the highest of all the possible wages, even though the proper prevailing wage depends on where the work is performed and the particular job being performed."  *Id.* ¶ 31.

Alpha Services responded to the request for information.  But before receiving a reply or final determination, Alpha Services filed this lawsuit against DOL and the Secretary of Labor, asserting that the change in the way the DOL required H-2B jobs to be advertised amounted to a new substantive rule that the DOL adopted without complying with the notice-and-comment procedures of the Administrative Procedure Act.  Alpha Services simultaneously moved for a

temporary restraining order and preliminary injunction, seeking relief from "application of this new substantive rule."  Pl.'s Mem. [4] at 10.

The parties were able to reach an agreement as to the issuance of a labor certification for the summer 2014 reforestation work without the need for an emergency hearing, and Alpha Services withdrew its motion for emergency and preliminary injunctive relief.  Specifically, the DOL "agree[d] to issue a labor certification to Alpha Services" in exchange for Alpha Services's agreement "to pay the highest wage rate for every component of a job classification, rather than various wage rates based on the particular job duties the workers performed."  Pl.'s Resp. [13] at 2.

Defendants then moved to dismiss for lack of jurisdiction [8], asserting that the issuance of the labor certification rendered Alpha Services's claims moot.  Alpha Services responded and filed its motion for leave to amend [11].  The issues raised in both motions have been fully briefed, and the Court is prepared to rule.

II.      Analysis

A.      Motion to Dismiss

Federal courts may constitutionally "adjudicate only 'cases' or 'controversies.'"  *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008) (citing U.S. Const. art. III, § 2; *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).  And "[i]f a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents."  *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 525 (5th Cir. 2008).

Defendants assert that, because Alpha Services received a labor certification for its summer 2014 reforestation work, the controversy between the parties is now moot.  Alpha

Services disagrees, stating that while the immediate threat to its ongoing operations dissolved with the issuance of the labor certification, a live controversy still exists.

As to any claim relating to the summer 2014 work, Defendants are correct that Alpha Services voluntarily agreed to pay the highest wage rate in exchange for the issuance of the certification, so the dispute over the summer 2014 labor certification is now moot. Alpha Services argues that the claim is nevertheless saved from mootness because it is "capable of repetition, yet evading review."

The "capable of repetition, yet evading review" exception to mootness has two prongs, and plaintiff "bear[s] the burden of proving both prongs." *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010). To establish the exception, a plaintiff must show: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alterations in original) (internal quotation marks omitted). The second prong is not satisfied by proof of "[a] 'mere physical or theoretical possibility'"; instead, the plaintiff "must show either a 'demonstrated probability' or a 'reasonable expectation'" that it "will 'be subject to the same [unlawful governmental] action again.'" *Libertarian Party*, 595 F.3d at 217 (second alteration in original) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)) (internal quotation marks omitted).

Alpha Services falls short of establishing that the present case is one of the "exceptional situations" in which the "capable of repetition, yet evading review" exception applies. *Spencer*,

523 U.S. at 17.  The entirety of its argument on the "demonstrated probability" or "reasonable expectation" element is as follows:

> Alpha Services has demonstrated that it is continually before the Department of Labor seeking labor certifications so that it may employ and re-employ H-2B workers.  That is the nature of its business.  As attachments to its Complaint, Alpha Services has demonstrated that it submitted three labor certifications from mid-201[3] into early 2014 seeking approval to employ 527 H-2B workers.  Alpha Services will continually be before the Department of Labor seeking approval of a labor certification.

Pl.'s Resp. [13] at 7.  Alpha Services also states that "there is nothing to prohibit Defendants from applying the unlawful wage rate rule in the future to Alpha Services and then requiring adherence to that wage rate rule under the threat that a labor certification will be withheld unless Alpha Services agrees to comply with the rule."  *Id.* at 6.

At best, this argument and Alpha Services's evidence shows that Defendants "will have an opportunity to act in the same allegedly unlawful manner in the future; however, it does not show a reasonable probability that [Defendants] will act in that manner if given the opportunity." *Libertarian Party*, 595 F.3d at 217.  "By proving opportunity, [Alpha Services has] only demonstrated a 'physical or theoretical possibility' that [Defendants] may repeat [their] actions, and such a demonstration is insufficient to meet [its] burden . . . ."  *Id.*; *accord Hancock Cnty. Bd. of Supervisors v. Ruhr*, No. 1:10cv564-LG-RHW, 2013 WL 4483376, at *4 (S.D. Miss. Aug. 20, 2013) ("Plaintiffs have merely shown that the Defendants may be presented with an opportunity to act in the same allegedly unlawful manner in the future.  That is not enough.  To satisfy the second prong of the exception Plaintiffs must demonstrate a reasonable expectation that the government *will* act in that manner."), *aff'd*, 568 F. App'x 295 (5th Cir. 2014).

Alpha Services has not demonstrated that the "capable of repetition, yet evading review" exception to the mootness doctrine applies.  The claim relating to the summer 2014 work is moot.  *See Spencer*, 523 U.S. at 18 ("[M]ootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so.  We are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.").

Alternatively, Alpha Services suggests that it states a justiciable claim that, as a result of Defendants' promulgation of a new agency rule, it may be "forced in the future to pay a higher wage than lawfully necessary."  Pl.'s Resp. [13] at 3.  Defendants counter that any such claim is not ripe for review.  "Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable."  *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).  To demonstrate that its claim is ripe, a plaintiff must show that it "has suffered a concrete injury."  *Id.* at 342 (internal quotation marks omitted).  "If the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication."  *Id.* (alteration in original) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

Alpha Services's asserted injury is the higher-than-legally-necessary wage it may have to pay in the event that Alpha Services in the future submits a labor-certification application similar to its summer 2014 application and Defendants treat such an application similarly to the way they treated Alpha Services's application this year.  A claim based on such an injury is plainly contingent on future events that may not occur as anticipated or at all and is therefore not ripe for

judicial review.  Because Alpha Services fails to present a justiciable case or controversy, the

Court lacks subject-matter jurisdiction.  Defendants' motion to dismiss is granted.


   B. Motion to Amend

  Alpha Services has also moved to amend the Complaint "in order to eliminate its requests

for emergency injunctive relief, to add several new causes of action that challenge[] the

Defendants' purported authority to promulgate the legislative rule at issue, and to more narrowly

define the issues for Court review."  Pl.s' Mem. [12] at 2.  But the proposed amendment does not

cure the jurisdictional deficiencies outlined *supra*.  The amendment would be futile and is

denied.  *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir.

2014) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment

would be futile."); *cf. In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 465 F. Supp. 2d 687,

706 (S.D. Tex. 2006) ("Without a federal claim, there would be no federal jurisdiction over the

proposed state-law claims and thus allowing amendment to assert them would be futile.").

III. Conclusion

  The Court has considered all of the parties' arguments.  Those not specifically addressed

would not have changed the outcome.  For the foregoing reasons, Defendants' Motion to Dismiss

for Lack of Jurisdiction [8] is granted, and Plaintiff's Motion for Leave to File a First Amended

Complaint [11] is denied.  A separate judgment of dismissal without prejudice will be entered in

accordance with Federal Rule of Civil Procedure 58.

  **SO ORDERED AND ADJUDGED** this the 23rd day of October, 2014.

     s/ *Daniel P. Jordan III*
     UNITED STATES DISTRICT JUDGE